May it please the court. I'm John Wolfgang Gehart. I am the counsel for Norma Heredia, Romero-Heredia, and I'd like to reserve, if I can, about three minutes. Please watch the clock. I will do my best. I'm sorry I'm a little bit under the weather today. I want to start off with our cat claim because I think it's the easiest claim and the strongest claim for the court. It's not as confusing. It doesn't go outside of the bounds of the court's own immigration guideline that you provide to help explain this very difficult area of law. Now, the cat claim for deferral really turns on three pages in the record. The first page is page 404-405, which is the translation of Ms. Romero's declaration that she makes to what is the district attorney in Michoacan, wherein she explained to the representative of the public minister of law that her ex-husband, since the third day of their marriage of eight years, had severely beat her and that she wants to leave him and that she wants their The representative of the minister, at the bottom of page 404 of the Certified Administrative Record, Mr. Villalobos Valenzuela, even remarks that Ms. Romero had marks of beating all over her body. She also presented a prescription. Now, the immigration judge and the BIA really are just looking at her testimony on page 248 of the record to say that, oh, she just went to say that she wanted to keep her children without really referencing the importance of this formal declaration to the DA. And I went to complain to the police for the, and then she stops and breaks down. She continues, so I would like, so I'd be able to keep my children and will not be able to, and he will not be able to take those children. And the question is then asked on lines 11 and 12, what did they tell you? Did they tell you anything? And it doesn't seem like there was an exact response to that question, but she responds, the police didn't take him or threatened him. I think this goes to the most important part and the part where the BIA is denying the cat protection. Because they're saying that just going to the police and saying that you've been beaten and the police don't do anything, that's not enough, is what the BIA is saying. Now, that was in 2006, December 8th, 2006, and the BIA just references that in their second decision in this case without looking at any of the new law that this court has published in the intervening years going into what is acquiescence of foreign officials. Did she ask the police to arrest her husband? I mean, I think the government was focusing on her, her specific request was to have help in keeping her children. And there wasn't evidence that she had repeatedly or had insisted that they stop her husband from beating her. And so in that context, it was hard to say it met the criteria of the government was turning a blind eye to this abuse or persecution. Well, I think that where you see the blind eyes and the fact that you have this formal declaration, not just to a the public ministry of public laws, the public ministry of law, this is the prosecutor's office saying, please help me, I'm coming to you, I'm battered and bruised and broken. Did she ask them to stop her husband or to arrest her husband or a restraining order? It just, I mean, the, I don't know, the IJ and the government seems to focus on her specific request was help me keep my children. And they reference the government references, there were ministries set up, there were programs set up, she didn't have access to them. That's why I point the court to lines 11 and 12, the transcript that the car 248, the police didn't take him or anything when I tried to stay away from him. So she's asking them for help, and they're not giving help to her. And the BIA in its 2006 decision is really focusing on all the respondents ex evidence that he's a public official in the government of Mexico. And they're using all these old precedents that they have made over the years and that this court has repeatedly overturned saying no, you've got to look much more broadly. So what's the case that helps you the most that's most analogous to this one? Well, in terms of analogous, or I think just the rule of law, the one I cited as Tapia case, Tapia Madrigal, I think was was important in terms of the acquiescence of a public official. And there is also the Arnelos Chavez V. Gonzalez, which was in 2006, after the BIA had made his decision that a public official having awareness and breaching his legal responsibility to intervene to These are the things that this court has been saying that acquiescence of a public official doesn't mean that the public officials actually they're beating you up. It's that they're not protecting you, or they don't have the ability to protect you. And that's how this area, specific area of cat law has evolved. And, I mean, my recollection of those cases, and I don't know the exact factual situation or analysis, but there, there would be a series of beatings of homosexuals and the police turn a blind eye despite repeated requests. I think that was analogous to Arnelos. And I don't remember a case where the, the person requested help for something else, presented with these, with marks, but didn't specifically ask them to arrest the, the brutalizer. I, I just don't remember a case like that. That's why I was asking for a case that was more analogous. I mean, obviously, even in this country, the police can't stop everything that happens. Correct. And, and we have cases holding that, and that doesn't amount to a sort of willful blindness that, that amounts to torture. Certainly. So, so what's the case that's closest to your situation? Are you saying Arnelos is that case, or Tapia is that case? I mean, there are a lot of cases that are, are, I think are similar. But I think the, maybe, maybe what's even more important than the individual factual patterns is to also look what has happened within the domestic violence law as following matter of RA. The government has really changed its positions on a lot of these cases, saying that, yes, women are a group, they're not being protected. But in this particular case, because there is the shadow of a plea to a drug trafficking charge, that they don't want to look at those cases. They don't want to look back. We've been litigating domestic violence issues in this circuit for decades now. And the government's finally turning and helping some people. But this is a case, I think, that the court can just grant cat, because in the record, you have a they're beaten from head to toe, black and blue, it even says so. And the DA does not do anything. Now, if a woman in this country had gone to the DA's office, black and blue, showing that she'd been hospitalized, knocked unconscious for several days, and that she's been beaten for eight years, there would be some reaction. Now, the police, yes, they can't do everything. But they can certainly go out and arrest someone for something that is so terrible and traumatic that happened to this woman. And they didn't. So there's no protection in Mexico. Is there a real risk that she's going to be assaulted by her ex-husband? Yes, Your Honor. She hasn't seen her ex-husband since 2000, they're divorced since 2004, so she hasn't seen him for 15 years. Is that, are you suggesting that she really faces an imminent risk here? Yes, Your Honor. I mean, this isn't in the record, but she provided, the she's still trying to contact me. She's still threatening me. And you see her there in the audience with her service dog. Now, she's not blind. It's an emotional service dog. Because she still goes every week, for an hour, to therapy. This man broke her head, broke her body, and broke her mind. She deserves some protection. And he's still trying to get in touch with her. I'd like to, with the remaining, go to the more complex issue that I have. And that's the particularly serious crime under the withholding statute. Because that one takes a while to wrap your heads around. Because, as Judge Reinhart, in several of these cases, noted, all courts have found that the government's interpretation of the particularly serious crime, to not look at a person's actual dangerousness to the community, is a reasonable interpretation. Now, I can't argue against that. But what I can argue is that, under the Supreme Court precedent of the pocket habana and the charming Betsy, that reasonable interpretation is actually an impermissible interpretation under the law. Because the international community, under customary international law, which is where I bring in the pocket habana, and the UN and its High Commissioner for Refugees, how they interpret the Geneva Conventions, and this is where I bring in the charming Betsy for international law standards. The Supreme Court decisions. To take the interpretation of the international community, both in customary international law and the published precedent of international law, and accept it as the law of the United States. That takes away the reasonable interpretation, because this is not a new statute. And- Are you preserving this argument? Because we have a precedent that says, that if the Supreme Court rejects that argument, I think you ask in your brief that we should overrule Ramirez-Ramos. But of course, we as a pre-judge panel can't do that. So are you preserving this for an en banc call? Well, I did make an en banc call, Your Honor. It was submitted with my brief. But in addition, these arguments have not been addressed by the Court. The Supreme Court has not. And it's binding upon all circuit courts. I never got a response positively or negatively to my request for an en banc panel, because it would depend on how this Court interpreted whether they were actually just overturning the precedent, as happened recently with the crime of violence statute last week, or I think maybe in this week. Was it Friday or Monday? And- But my argument here is simply that the executive branch, even if it's a reasonable interpretation of what Congress has made in terms of enacting the Geneva Conventions in our session to the treaty, that they are bound by customary international law and by international law under these two cases. Now, if you took the time or if your clerks took the time to read the very lengthy Packett-Habana, the Supreme Court gives centuries of legal history. And when I was reading it in law school, I'm just kind of like, this is a crazy case. Why are we reading about fishing rights? But when I finally sat down with my wonderful professor, Kurt Garbisi, he sat down and said, don't you understand what's really going on? This isn't a new statute that some politician just made up and we ought to interpret it. This is a body of law that has existed for centuries and we are joining the international community in recognizing this body of law. And if there is a- and what it comes down to is this. If the international standard, which in this case includes looking at a person's actual dangerousness to the community, is enshrined in international law, either customary international law or international treaties, the executive branch is not free to make another reasonable interpretation of it if the interpretation under international law is possible under the exact wording of the statute that Congress enacts. So in essence, what I am doing and what I'm asking this court to do is recognize that by joining the Geneva Conventions, we joined a legal community that interpreted this particularly serious crime bar in a particular way. And under international law and under the law of the United States as the Supreme Court has in these two cases, the executive branch is bound by the existing interpretation. Your time has expired, so please wrap up. Good morning, Your Honors. May it please the Court, I'm Carmel Morgan on behalf of the respondent, the U.S. Attorney General. I guess I can go ahead and take the issues in the order that the petitioner addressed them. As far as the Catt claim goes, I don't think there's anything that shows that the BIA's decision in 2006 was ignoring current case law at the time. It is true that the document that the petitioner pointed to in the record, he says that it was issued by a district attorney. I'm not sure that that's super clear from the record exactly who it was issued from, but I'll take it that it was. The petitioner's own testimony in the document itself do not indicate that the petitioner specifically requested that her husband be arrested. It shows that her concern was taking the children or having permission to do so. The government doesn't dispute that she was found credible and that she suffered horrific abuse at the hands of her husband. The issue really is, was a public official in Mexico aware beforehand so that they could prevent her abuse? This one particular incident that occurred in 1996 was the only incident she reported, so obviously they couldn't have prevented that particular incident, but it appears to me that immediately thereafter she left Mexico. I'm not sure how she's so certain that nothing was ever done since she departed very quickly after she made the report. The government also points out in its 2006 decision with regards to the Catt claim that conditions have changed in Mexico since 1996 when she left, and there are in fact domestic violence services available that maybe not were available at the time that she departed Mexico. With regard to the petitioner's arguments relating to customary international law and raising the case of the Ramirez-Ramos case, it's very clear that customary international law does not apply when Congress has spoken to an issue, and Congress has spoken to this issue in this case. It's also clear that this court has spoken to this issue in the Ramirez-Ramos case, therefore the issue is settled that under this court's binding case law as well as the law of the board, his concerns about future dangerousness have already been addressed and resolved. It's been held as far back as matter of Carballa, I'm not sure how you say it, but from 1986 onward that you don't engage in a separate dangerous analysis of the alien itself, that the focus is on the dangerousness of the crime, the conviction, the nature of the conviction, and that's nothing new. Again, that's been the law since 1986. I can also address, I guess, the petitioner's argument with regard to retroactivity and the NAM case. It's true that the board's most recent decision cites the NAM case. NAM was decided maybe two weeks after this court's remand. NAM in some places cites to matter of YL. I don't think that's a concern here. It's true that the remand in this case was remanded pursuant to this court's decision in Miguel Miguel, where the concern was that matter of YL could not be applied retroactively because it announced a new rule, an abrupt departure, I guess the court considered it, where YL instituted a presumption that a drug trafficking crime is a particularly serious crime, a very strong presumption. That presumption wasn't applied in this case on remand. Therefore, the YL concerns, I think, are not present. Matter of NAM was applied, but NAM didn't announce new law. NAM very carefully follows a long line of cases from Frentescue forward, and I don't think says anything new. It's merely an elucidation or a clarification of past case law. If the court has no further questions, the government asks that you deny the petition for review. Thank you.
judges: Sessions, Ikuta, Owens